```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
―――――――――――――――――――――――――――

**UNITED STATES OF AMERICA,**

      - against -

**DOMANE GORDON,**
                  Defendant.

**25-cr-364 (JGK)**

**MEMORANDUM OPINION AND ORDER**

―――――――――――――――――――――――――――

**JOHN G. KOELTL, District Judge:**

On August 13, 2025, the defendant, Domane Gordon, was charged by indictment with one count of possession of a firearm and ammunition by someone unlawfully present in the United States, in violation of 18 U.S.C. § 922(g)(5)(A). The defendant moves to dismiss the indictment pursuant to Federal Rule of Criminal Procedure 12(b) and the Second Amendment to the United States Constitution.[1] For the reasons explained below, the defendant's motion is **denied.**

---

[1] While the defendant brings this motion pursuant to Federal Rule of Criminal Procedure 12(b)(3), that rule relates to the suppression of evidence. As the parties acknowledged at oral argument, this motion is more appropriately brought pursuant to Federal Rule of Criminal Procedure 12(b)(1) because it is a pretrial motion arguing that the statute at issue is unconstitutional on its face under the Second Amendment and requires no trial to decide.

**I.**

The defendant is a native and citizen of Jamaica.[2] Compl. ¶ 5(a), ECF No. 1. In October 2021, the defendant entered the United States unlawfully from Mexico. Id. ¶ 5(b). The defendant was detained and subsequently served with a Notice to Appear, which charged him as removable from the United States under § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act. Id. ¶¶ 5(d), (f).

On March 15, 2025, at approximately 2:00 a.m., New York City Police Department officers in the Bronx, New York, observed the defendant commit several traffic violations and arrested him for reckless driving, in violation of New York Vehicle & Traffic Law § 1212. Id. ¶¶ 3(a)-(f). While searching the defendant incident to the arrest, the officers found a loaded 9-millimeter semi-automatic Luger pistol in the defendant's jacket pocket. Id. ¶ 3(g). During a post-arrest interview, the defendant admitted the gun was his. Id. ¶¶ 4(c)-(f).

On July 17, 2025, the Government filed a complaint against the defendant, charging him with one count of possession of a firearm and ammunition by an illegal alien, in violation of 18 U.S.C. § 922(g)(5)(A), which makes it a felony for any person

---

[2] Unless otherwise noted, the facts are taken from the complaint and are accepted as true for the purposes of deciding this motion.

2

"illegally or unlawfully in the United States" to "possess in or affecting commerce, any firearm or ammunition." Id. at 1. On August 13, 2025, the defendant was indicted on that charge. ECF No. 5.

The defendant now moves to dismiss the indictment on the grounds that § 922(g)(5)(A) is unconstitutional because it violates the Second Amendment.

## II.

The Second Amendment provides, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."[3] U.S. Const. amend. II.

Beginning with District of Columbia v. Heller, 554 U.S. 570 (2008), the Supreme Court has interpreted the Second Amendment right to keep and bear arms in the context of challenges to firearm regulations. Zherka v. Bondi, 140 F.4th 68, 72 (2d Cir. 2025). Under the Supreme Court's decision in New York State Rifle & Pistol Association v. Bruen, 597 U.S. 1 (2022), "a court assessing firearm regulations must first consider whether 'the Second Amendment's plain text covers an individual's conduct.'" Zherka, 140 F.4th at 73 (quoting Bruen, 597 U.S. at 24). If it

---

[3] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, omissions, emphasis, quotation marks, and citations in quoted text.

3

does, "the Constitution presumptively protects that conduct." Bruen, 597 U.S. at 24. "The burden then shifts to the government to justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." Zherka, 140 F.4th at 73. "At this step of the Bruen analysis, the government is tasked with identifying historical analogues that demonstrate a tradition of regulation that is comparable to the challenged law. In short, the text of the Second Amendment and the history of firearms regulation in this country are the guiding lights for adjudication of a Second Amendment challenge to a firearm regulation." Id.

The Court of Appeals for the Second Circuit has noted that the Supreme Court "has struck down only firearms laws that overly restrict the rights of 'law-abiding, responsible citizens' to own and possess guns." Id. Moreover, while their analyses have differed, every Court of Appeals to consider a post-Bruen constitutional challenge to § 922(g)(5)(A) has upheld the law. See Vazquez-Ramirez, No. 24-3544, 2026 WL 17253, at *4 (9th Cir. Jan. 2, 2026) (per curiam); United States v. Murillo-Lopez, 151 F.4th 584, 591–92 (4th Cir. 2025); United States v. Carbajal-Flores, 143 F.4th 877, 888 (7th Cir. 2025); United States v. Sitladeen, 64 F.4th 978, 985-86 & n.3 (8th Cir. 2023);

4

United States v. Medina-Cantu, 113 F.4th 537, 542 (5th Cir. 2024).[4]

### III.

Gordon challenges § 922(g)(5)(A) on its face.[5] "This is the most difficult challenge to mount successfully because it requires a defendant to establish that no set of circumstances exists under which the Act would be valid. That means that to prevail, the Government need only demonstrate" that § 922(g)(5)(A) "is constitutional in some of its applications." United States v. Rahimi, 602 U.S. 680, 693 (2024).

### A.

Bruen's first step asks whether the plain text of the Second Amendment covers the defendant's conduct. In this case, the relevant question is whether illegal aliens are among "the people" protected by the Second Amendment, U.S. Const. amend. II. Zherka, 140 F.4th at 76. However, in Rahimi, the Supreme Court did not concentrate its analysis on whether the defendant

---

[4] At argument, the defendant identified only one decision finding § 922(g)(5)(A) unconstitutional. That decision, United States v. Rebollar-Osorio, No. 24-cv-0040, 793 F. Supp. 3d 212 (D. Me. 2024), held § 922(g)(5)(A) unconstitutional only as applied to the defendant in that case and was not a facial challenge to the statute. In any event, that decision is inconsistent with the unbroken line of Court of Appeals decisions finding the statute constitutional.

[5] In United States v. Perez, 6 F.4th 448 (2d Cir. 2021), the Court of Appeals for the Second Circuit concluded that § 922(g)(5)(A) was constitutional as applied to the defendant in that case, but it did so under a pre-Bruen analysis.

was subject to the protection of the Second Amendment, but rather on the historical analogues of the statute at issue in that case, 18 U.S.C. § 922(g)(8). See 602 U.S. at 693-700. Indeed, the Court rejected the Government's contention that the Second Amendment protected only "responsible" people. See id. at 701-02.

And as the Court of Appeals for the Second Circuit has noted, "[d]eciding whether undocumented immigrants like [the defendant] have a constitutional right to possess firearms risks introducing difficult questions into our jurisprudence, including questions that have divided other courts."[6] Perez, 6 F.4th at 453. In any event, it is not necessary to decide the question here, because even if the Second Amendment presumptively protects undocumented immigrants, there are sufficient historical analogues to § 922(g)(5)(A) to justify Congress's decision that individuals who are illegally or unlawfully in the United States pose sufficient danger to be subject to the firearm disarmament statute.

---

[6] Compare Carbajal-Flores, 143 F.4th at 882 (declining to hold that undocumented immigrants are not among "the people"), Vazquez-Ramirez, 2026 WL 17253, at *2 (assuming without deciding that undocumented immigrants are among "the people"); United States v. Huitron-Guizar, 678 F.3d 1164, 1167–70 (10th Cir. 2012) (same), and United States v. Jimenez-Shilon, 34 F.4th 1042, 1045-46 (11th Cir. 2022) (same), with Medina-Cantu, 113 F.4th at 541-42 (aliens are not among "the people"), and Sitladeen, 64 F.4th at 987 (same).

**B.**

At Bruen's second step, the Government may justify a challenged firearm disarmament by showing "that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." Bruen, 597 U.S. at 19. In Rahimi, the Supreme Court made clear that "the Second Amendment permits more than just those regulations identical to ones that could be found in 1791." 602 U.S. at 691-92. "A court must ascertain whether the new law is relevantly similar to laws that our tradition is understood to permit, applying faithfully the balance struck by the founding generation to modern circumstances." Id. at 692. Thus, "when a challenged regulation does not precisely match its historical precursors, it still may be analogous enough to pass constitutional muster. The law must comport with the principles underlying the Second Amendment, but it need not be a dead ringer or a historical twin." Id.

Unsurprisingly, there is no "historical twin" for § 922(g)(5)(A) from the colonial era because the phenomenon of "illegal" immigration significantly post-dates the ratification of the Second Amendment. See U.S. Citizenship and Immigration Services, Early American Immigration Policies, https://www.uscis.gov/about-us/our-history/overview-of-ins-history/early-american-immigration-policies (July 30, 2020)

("Americans encouraged relatively free and open immigration during the 18th and early 19th centuries, and rarely questioned that policy until the late 1800s."). But the Court of Appeals for the Second Circuit's decision in Zherka teaches that the historical tradition of firearms regulation in the United States supports the constitutionality of § 922(g)(5)(A).

Zherka considered a challenge to the constitutionality of 18 U.S.C. § 922(g)(1), which prohibits the possession of firearms by convicted felons, as applied to persons convicted of non-violent felonies. In Zherka, the Court of Appeals undertook a thorough review of the historical record, 140 F.4th at 77-91, and concluded that while § 922(g)(1) had no "historical twin," the nation's historical tradition of firearms regulation nonetheless supported its constitutionality, id. at 84-91.

In the absence of a "historical twin" for § 922(g)(1), the Court of Appeals noted that the relevant inquiry at step two of Bruen was whether the nation's historical tradition "encompasses . . . laws disarming broad classes of people," and concluded that "[t]he answer is unequivocally yes. English, American colonial, and early American histories abound with examples of laws demonstrating that legislatures had broad authority to regulate firearms, including by disarming large classes of people based on their status alone." Id. at 85. The Court of Appeals went on to conclude that persons' status as

8

felons "is based on those persons' prior conduct . . . that constitutes a serious violation of the law. Such violations of the social compact indicate a serious disregard for fundamental legal norms. Congress's conclusion that a felony conviction demonstrates a character or temperament inconsistent with the safe and prudent possession of deadly weapons is an appropriate exercise of its longstanding power to disarm dangerous categories of persons." Id. at 91.

The plaintiff in Zherka claimed that § 922(g)(1) was unconstitutional as applied to him because he was convicted of a nonviolent felony: conspiracy to make a false statement to a bank and to sign and file a false income tax return, in violation of 18 U.S.C. § 371. Id. at 70. But the Court of Appeals rejected that contention, concluding that "the Second Amendment does not bar Congress from passing laws that disarm convicted felons, regardless of whether the crime of conviction is nonviolent." Id. at 93.

Zherka teaches that statutes that disarm the lawless are well within the history and tradition of firearms regulation. That logic applies with full force in this case. Because Section 922(g)(5)(A) criminalizes firearm possession by those "illegally or unlawfully in the United States," by its own terms, it is directed at the lawless. Entering or remaining in the United States illegally or unlawfully is a "violation of

9

basic terms of the social contract. . . . That conduct is reasonably regarded as an indication that such a person lacks the 'character of temperament necessary to be entrusted with a weapon.'" Zherka, 140 F.4th at 94 (quoting Bruen, 597 U.S. at 13 n.1). Congress therefore "ha[d] every right to conclude that those who show a willingness to defy our law are candidates for further misfeasance or at least a group that ought not be armed when authorities seek them." Perez, 6 F.4th at 456.

    Section 922(g)(5)(A) is thus sufficiently analogous to many earlier firearm regulations, as explained at length in Zherka. Because the law "comport[s] with the principles underlying the Second Amendment," the defendant's facial challenge fails. See Rahimi, 602 U.S. at 692-93 (explaining that facial challenges "require[] a defendant to establish that no set of circumstances exists under which the Act would be valid"). The defendant's motion is therefore **denied**.

## CONCLUSION

The Court has considered all of the arguments of the parties. To the extent not specifically addressed, the arguments are moot or without merit. For the foregoing reasons, the defendant's motion is **denied.**

The Clerk is respectfully requested to close ECF No. 19.

**SO ORDERED.**
Dated:   New York, New York
         January 13, 2026

_____
John G. Koeltl
**United States District Judge**